**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No.: 24 CR 411-2** |
| | ) | **Judge Harjani** |
| DAMARRI CONNER, | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>DEFENDANT CONNER'S SENTENCING MEMORANDUM</u>

In accordance with Rule 32 of the Federal Rules of Criminal Procedure, 18 U.S.C. §3553(a), as well as the Sixth Amendment of the United States Constitution and the Supreme Court's opinion in *United States v. Booker*, 543 U.S. 220 (2005), Damarri Conner (Damarri) respectfully requests a sentence of three years on Count 1, to be followed by the mandatory consecutive term of 84 months on Count 2, and an appropriate term of supervised release.

Such a sentence will be sufficient without exceeding what is necessary to accomplish the goals listed in 18 U.S.C. §3553(a)(2). It would also align with the limitations of 18 U.S.C. §3582(a), which states "courts, in determining whether to impose a term of imprisonment, . . . [shall recognize] that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. §3582(a).

## I.    INTRODUCTION

Damarri Conner is twenty-three years old. He grew up on the South Side of Chicago without ever knowing his father, who died in a car accident before Damarri was born. He was raised by a single mother who worked as a hotel room cleaner. Despite these difficult beginnings, Damarri graduated from high school with a 3.1 grade point average, participated in JROTC and

1

multiple sports, and has held legitimate employment. He clearly has potential — he is intelligent and capable. Unfortunately, the absence of a father figure, untreated mental health conditions, substance use, and the environment and violence that surrounded him on Chicago's South Side all took their toll.

By the time of the instant offense, Damarri had been shot twice in as many months, had lost friends to gun violence, and was self-medicating with marijuana and cocaine to cope with trauma he had no tools to process. None of this excuses his conduct. But it provides the Court with essential context for understanding how a young man with genuine potential arrived at this point. Damarri has since accepted full responsibility for his actions. He has had no disciplinary incidents during his pretrial detention. He has expressed sincere remorse (he attempted suicide) and has articulated concrete plans for a productive future.

Damarri does not ask the Court to overlook the seriousness of his conduct. He asks only that the Court consider his history, his characteristics, and his potential for rehabilitation, and impose a sentence below the guideline range that is sufficient but not greater than necessary to serve the purposes of sentencing. The combined sentence will mean he will spend a decade in prison. He will be in his 30s when released, at a point where he is unlikely to engage in further criminal conduct, when his daughter will already be a teenager, his friends will have already moved on with their lives, and there will be no point in punishing him any longer.

## II.    THE STATUTORY FACTORS

Section 3553(a) directs this Court to impose a sentence that is "sufficient, but not greater than necessary, to comply with" the purposes of sentencing set forth by Congress. 18 U.S.C. §3553(a)(2). To fashion the sentence, 18 U.S.C. §3553(a) directs this Court to consider:

- The nature and circumstances of the offense, as well as the history and characteristics of the defendant (§3553(a)(1));

- The need for the sentence to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (§3553(a)(2));

- The kinds of sentences available (§3553(a)(3));

- The sentencing guideline range (§3553(a)(4));

- Any Sentencing Commission policy statements (§3553(a)(5));

- The need to avoid unwarranted sentencing disparities among defendants with similar records who engaged in similar conduct (§3553(a)(6)); and

- The need to provide restitution (§3553(a)(7)).

The guidelines are one of many factors the Court must consider when imposing a sentence. *See United States v. Booker*, 543 U.S. 220, 259 (2005). They carry no greater weight than any other factor. The §3553 factors "are broad, vague, and open-ended," leaving the sentencing judge with "considerable discretion to individualize the sentence to the offense and offender as long as the judge's reasoning is consistent with §3553(a)." *United States v. Wachowiak*, 496 F.3d 744, 748 (7th Cir. 2007); *abrogated on other grounds by Nelson v. United States*, 555 U.S. 350 (2009).

A. **SECTION 3553(a)(1): THE NATURE AND CIRCUMSTANCES OF THE OFFENSE, AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

Section 3553(a)(1) provides that the offending conduct should be considered alongside the defendant's history and characteristics. 18 U.S.C. § 3553(a)(1). One must view the defendant's role in the offense and try to understand them as a person, evaluating their criminal conduct *in light of* how they have otherwise lived their lives.

### 1. The Nature and Circumstances of the Offense

Damarri does not minimize the seriousness of the instant offense. He has accepted responsibility by pleading guilty to both counts without a plea agreement. The facts are known to the Court, and there is no need to elaborate further.

### 2. The History and Characteristics of the Defendant

#### a. *Personal History*

Damarri Kejuan Conner was born on January 14, 2003, in Chicago, Illinois, to unmarried parents, Omar Conner and Tondalaya Lucas. Damarri never met his father. Omar Conner died in a car accident before Damarri was born. PSR¶65. The absence of a father has been a defining feature of Damarri's life. As he told the probation officer, his lack of a father figure had a "major effect" on him. He regrets not "being raised by a man to teach how everything goes." PSR¶66.

Damarri was raised by his mother, Tondalaya Lucas, who works as a hotel room cleaner. Despite having limited resources, Ms. Lucas did her best to provide for her son, and Damarri has acknowledged that she did a "good job" providing for him. He describes his mother as his "heart." PSR ¶¶ 65, 67. Around 2014, Ms. Lucas started a relationship with Myrick Gunn, who became a stepfather figure to Damarri. Mr. Gunn ran a landscaping company and a car wash, and Damarri

described their relationship as "very good." Tragically, Mr. Gunn died of a heart attack in September 2024, while Damarri was in custody. PSR ¶68.

Damarri has two half-siblings. He maintains a "very good" relationship with his half-brother, Daszon Jordan, who is 29 years old, works as a limousine driver, and lives with Ms. Lucas in Chicago. PSR ¶69. His other half-sibling, Amore Conner, is a paternal half-brother with whom Damarri has no ongoing contact. PSR ¶69. His grandmother, with whom he is close, is 86 years old and in poor health.

Damarri is the father of a five-year-old daughter, Treasure Godfrey, who lives with Ms. Lucas. PSR ¶71. Although his relationship with Treasure's mother has ended, Damarri and his mother stay in contact regarding the child's well-being. Since around 2023, Damarri has been dating Aaliyah Amos of Columbus, Ohio, whom he describes as "good." PSR ¶70.

Damarri has been a lifelong resident of Chicago's South Side. From 2013 until his arrest in November 2023, he lived with his mother, stepfather, half-brother, and daughter on East 97th Street. PSR ¶73. Growing up in this environment, Damarri experienced significant violence. He has witnessed friends being shot, people being robbed, and the body of a deceased friend. PSR ¶91.

In August 2023, just months before the current offense, Damarri was shot in the chest by an unknown person. The bullet fractured one of his ribs, and he was hospitalized at Christ Hospital in Oak Lawn, Illinois. PSR ¶79. In September 2023, he was shot again—this time in the right arm—while leaving a restaurant. He did not seek medical attention for the second shooting, removing the bullet himself. PSR ¶80. He still bears scars from gunshot wounds on his right chest and right biceps. PSR ¶76.

5

His mother, Ms. Lucas, confirmed these difficult circumstances in her interview with the probation officer. She stated that Damarri has a "good head on his shoulders" but that in recent years he had wanted to "explore" and was spending time around more "streetwise associates." Ms. Lucas opined that Damarri was "likely pressured into engaging in such conduct and 'reeled in' by persons savvier than him." PSR ¶72.[1] She added that the absence of his father "likely adversely impacted" Damarri, but that he has "matured into a good father to his child." Ms. Lucas stated emphatically, "I will never give up on him. I love him." PSR ¶72.

Demarri has spent most of his time incarcerated in either Cook County jail or Livingston County jail, where he was transferred after his suicide attempt, almost as if he were being punished for it. Unfortunately, Livingston County does not offer the same types of programs available to inmates at the MCC, nor do they provide in-person visitation like the MCC. Demarri has participated in some programs at Livingston County, though offerings are limited, including a program called Hustle 2.0 that teaches life skills and anger management, as well as an online course toward obtaining his CDL.

### b. *Mental Health*

Damarri's mental health history sheds more light on his journey to this courtroom. He was diagnosed with attention deficit hyperactivity disorder (ADHD) as early as age five or six. His mother recalls him being prescribed Adderall, though she could not confirm whether he received consistent counseling or therapy during his formative years. Ms. Lucas expressed that Damarri struggled in school because of his ADHD. PSR ¶82.

---

[1] Demarri understands that this is his mother's opinion, but he is responsible for the decisions he's made. He clearly accepts responsibility for his actions and has never told his mother that he was somehow tricked or duped into what happened.

At around age 19, Damarri voluntarily sought mental health treatment, telling the practitioner he wanted to "have some tests done, I wanted to see what was going on with me." He was again diagnosed with ADHD, prescribed medication, and attended weekly counseling sessions for about two months. PSR ¶83. In December 2023, while detained at Cook County Jail, Damarri met with a mental health practitioner who prescribed Buspar and Prozac for anxiety and ADHD. He continues to take these medications. PSR ¶84.

In 2024, while detained at the Metropolitan Correctional Center in Chicago, Damarri experienced a mental health crisis. Feeling depressed about his legal situation, what he had done, and the harm he had caused, he attempted to hang himself. He was discovered by his cellmate in a state of unconsciousness and was transported to St. Francis Hospital, where he was treated for approximately six hours. PSR ¶85. Damarri has reported that he has not experienced further thoughts of suicide and that his family and support system serve as protective factors. PSR ¶85. His mother has advised the probation officer that Damarri may also suffer from anxiety in addition to his ADHD. PSR ¶88.

The combination of untreated ADHD during childhood, being shot twice, exposure to widespread community violence, and losing his stepfather while in custody has left Damarri with serious mental health needs. A period of incarceration followed by supervised release with mental health treatment conditions will offer the structure and professional support he needs. The Bureau of Prisons can provide consistent mental health care that Damarri has struggled to access throughout his young life.

c. *Substance Abuse*

Damarri has acknowledged that substance use contributed to his involvement in the current offense. PSR ¶91. He started smoking marijuana daily around age 18, and by 19, he was also using

cocaine. PSR ¶90. He has openly admitted that he has a drug problem and that marijuana helped him cope with feelings of depression and symptoms of his ADHD, while alcohol contributed to anger issues. PSR ¶91. He described using substances to "clear his mind and cope with trauma" after witnessing violence in his community. PSR ¶91.

Since his detention, Damarri has obviously not used illicit substances. He understands that to stay sober, he needs to "find something productive" to replace his substance use. PSR ¶91. Substance abuse treatment as part of his sentence, and as a condition of supervised release, would equip him with the necessary tools to stay sober once he returns to the community.

### d. *Education and Employment*

Despite the challenges of his upbringing, Damarri earned a high school diploma from Chicago Vocational High School and Career Academy, graduating with a 3.1 GPA. PSR ¶94. In high school, he took part in the Junior Reserve Officer Training Corps (JROTC), as well as soccer, basketball, and track and field. PSR ¶94. He was also a member of the Jesse White Tumblers.

These achievements show he is a young man with discipline and the ability to succeed when given the opportunity.

Following graduation, Damarri held legitimate employment. He worked as a package handler at United Parcel Service (UPS) in Hodgkins, Illinois, earning $22 per hour and working 40 hours per week. PSR ¶98. His mother corroborated this employment and reported that she drove Damarri to UPS so that he could get to work. PSR ¶98. He also held positions at a Subway restaurant and at Marshalls. PSR ¶99. Prior to his detention, Damarri helped neighbors carry groceries and performed various "handy jobs," sometimes earning $100 for a day's labor. PSR ¶97.

Damarri has expressed a strong interest in pursuing training in commercial driving and diesel mechanics. PSR ¶96. He has stated that he wants to obtain a commercial driver's license (CDL) and drive trucks upon his release. PSR ¶87. The Bureau of Prisons offers vocational training programs that can help Damarri develop marketable skills and prepare for a productive reentry into society. This is precisely the kind of "educational or vocational training" that §3553(a)(2)(D) directs the Court to consider.

**B.    SECTION 3553(a)(2): THE GOALS OF SENTENCING**

Section 3553(a)(2) states that the sentence must provide just punishment, reflect the seriousness of the offense, promote respect for the law, provide adequate deterrence, protect the public, and provide the defendant with needed treatment, vocational and educational training, or other correctional treatment.

In this case, all of these goals can be achieved with the requested sentence. Damarri will face a substantial period of incarceration under this scenario. The mandatory consecutive sentence on Count 2 alone ensures a minimum of 84 months (seven years) of imprisonment.

A lengthy sentence of incarceration also provides Damarri with the opportunity to address his mental health needs, participate in substance abuse treatment, and obtain the vocational training he desires. The Bureau of Prisons' programming—including its CDL and vocational training programs—can equip Damarri with the skills he needs to lead a productive, law-abiding life upon release. 18 U.S.C. §3582.

**C.    §3553(a)(4): THE SENTENCING GUIDELINES RANGE**

The presentence investigation report calculates a total offense level of 28 and a criminal history category of II, yielding a guideline imprisonment range of 87 to 108 months on Count 1. PSR ¶109. His criminal history consists of three misdemeanor offenses, each of which led to court

supervision.[2] The mandatory consecutive term on Count 2 is a minimum of 84 months. Damarri does not challenge the calculation of the guidelines.

### D. §3553(a)(5): THE KINDS OF SENTENCES AVAILABLE

District courts should impose a sufficient sentence but not greater than necessary to meet the sentencing objectives. 18 U.S.C. §3553(a); *see Spears v. United States*, 555 U.S. 261, 129 S. Ct. 840 (2009). The Court should also consider that a sentence of three (3) years on count one, plus the seven (7) years on count two, will result in Damarri serving a substantial term of imprisonment of 120 months (10 years). He was twenty years old at the time of the offense and is twenty-three today. He will not be released until he is over thirty (30).

This matters because the research on age and criminal desistance is overwhelming and consistent. The United States Sentencing Commission has found that recidivism rates decline steadily with age. The Commission's data shows that offenders over age 30 at the time of release are significantly less likely to recidivate than younger offenders, and this effect grows more pronounced with each additional year of age. Offenders released between ages 30 and 39 recidivate at rates roughly half those of offenders released in their twenties.

This is consistent with decades of criminological research recognizing that the vast majority of individuals "age out" of criminal behavior. *See* Sampson & Laub, *Crime in the Making: Pathways and Turning Points Through Life* (1993); *see also Pepper v. United States*, 562 U.S. 476, 492–93 (2011) (recognizing that evidence of post-sentencing rehabilitation is relevant to §3553(a) factors, including the need to protect the public). The age-crime curve—one of the most

---

[2] Demarri has an ongoing case in state court regarding firearm possession. The council reviewed the case reports and found no indication that the investigating officers uncovered information suggesting Demarri was firing a weapon or that the case involved anything beyond a Class 4 possession.

well-established findings in criminology—demonstrates that criminal activity peaks in the late teenage years and early twenties and declines sharply thereafter.

By the time Damarri is released, he will have spent all of his twenties in federal custody. The impulsiveness and peer pressure typical of young adulthood—the very factors that contributed to his involvement in this offense—will have diminished. He will emerge as a man in his thirties, benefiting from maturity, hopefully some vocational training, mental health treatment available through the Bureau of Prisons, and a strong family support system awaiting him. His mother, half-brother, and daughter provide powerful reasons for Damarri to lead a law-abiding life upon his release.

Damarri recognizes the harm his actions have inflicted on the victims in this case. The Victim Impact Statement clearly shows that this offense has had a deep and lasting impact on the victims and their family. Nothing in this memorandum is meant to diminish that pain. However, the Court should consider that adding more months or years to Damarri's sentence will not undo the harm the victims have endured nor help them heal. The victims' trauma is real and warrants the Court's attention, but a longer sentence will not restore their sense of security, repair their injuries, or ease their daughter's distress. Only time, support, and professional treatment can do that.

A sentence beyond what is requested would serve only to warehouse Damarri past the point of diminishing returns for public safety. The Sentencing Commission's own research confirms that longer sentences may in fact make reintegration more difficult. *See* U.S. Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* at 2–3 (2017).

Damarri does not oppose the proposed conditions for supervised release, although he lacks the means to satisfy a fine. PSR ¶106.

### E.     3553(a)(6): THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES

Section 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records that have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The Supreme Court has clarified that a sentencing court can examine a co-defendant's sentence while conducting its disparity analysis. *Gall v. United States*, 528 U.S. 38 (2007). The Seventh Circuit "recently reaffirmed that our court is 'open in all cases to an argument that a defendant's sentence is unreasonable because of a disparity with the sentence of a co-defendant,' though we recognized that 'such an argument will have more force when a judge departs from a correctly calculated Guidelines range to impose the sentence.'" *United States v. Sanchez*, 989 F.3d 523, 541 (7th Cir. 2021), quoting *Statham*, 581 F.3d at 556." *United States v. Moore*, 50 F.4th 597, 604 (7th Cir. 2022).

Damarri's codefendant, Kenneth Merritt, has not been sentenced. PSR at 2. Agent Stevenson described the two as "co-accomplices" and reported that "neither defendant exerted any decision-making authority or control over the other." PSR ¶36. The Court should bear this equal culpability in mind and ensure that any sentence imposed on Damarri does not create an unwarranted disparity with the sentence ultimately imposed on his codefendant.

### III.     CONCLUSION

Damarri Conner is a twenty-three-year-old man who has faced hardship from the very start of his life. He never knew his father and was raised by a single mother of modest means in Chicago's South Side. He was diagnosed with ADHD as a young child but received inconsistent treatment. He was shot twice within two months. He turned to substances to cope with trauma he

12

had no other way to process. None of this excuses his behavior, and he does not ask the Court to excuse it.

But Damarri is more than the worst moments of his life. He is a high school graduate, a father, and a son whose mother will never give up on him. He has held legitimate employment, expressed genuine remorse, and made concrete plans for the future. He pled guilty without a plea agreement. He has been a model detainee, and he is only twenty-three years old.

For all of these reasons, Damarri respectfully requests that the Court impose the requested sentence and an appropriate period of supervised release. Such a sentence will be sufficient but not greater than necessary to accomplish the goals of sentencing in this case.

> Respectfully submitted,
> Damarri Conner, Defendant
>
> By: /s/ Steven A. Greenberg
> Attorney for the Defendant

Steven A. Greenberg
GREENBERG TRIAL LAWYERS
53 W. Jackson Blvd., Ste. 315
Chicago, IL 60604
(312) 879-9500
Steve@GreenbergCD.com